FILED
CLERK, U.S. DISTRICT COURT

03/26/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ AP _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

March 2025 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>FRANK EDWARD PETERS II,<br>  aka "Tasm D. Pemp,"<br>  aka "Peter Peters,"<br><br>          Defendant. | ED CR No. 5:25-cr-00096-PA<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 982: Criminal Forfeiture] |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

Defendant, Frannon Inc., Bqute Inc., and Lenders

1.    Defendant FRANK EDWARD PETERS II, also known as ("aka") "Tasm D. Pemp," aka "Peter Peters," resided in Rancho Cucamonga, California.

2.    Defendant PETERS was the sole owner of Frannon Inc., a California corporation formed in 2012, with its business address in Rancho Cucamonga, California.

3.     Defendant PETERS helped run Bqute Enterprises, also known as Bqute Inc., a California corporation formed in 2017, run by Person 1, and based in Upland, California.

4.     Defendant PETERS controlled checking accounts held in the name of Frannon Inc. ending in 2872 and 4950 at a branch of Bank of America, within the Central District of California.

5.     Defendant PETERS controlled checking accounts held in the name of Bqute Inc. ending in 9387 and 2076 at a branch of Bank of America, within the Central District of California.

6.     Defendant PETERS controlled checking accounts held in his own name ending in 9982 at a branch of Chase Bank, within the Central District of California.

7.     Defendant PETERS controlled a checking account held in the name of Person 1 ending in 4473 at a branch of Wells Fargo Bank, within the Central District of California.

8.     Bank of America, National Association, was a financial institution based in Charlotte, North Carolina, and was a United States Small Business Administration ("SBA") approved participating lender of Paycheck Protection Program loans.

9.     U.S. Bank, National Association, was a financial institution based in Minneapolis, Minnesota, and was an SBA-approved participating lender of Paycheck Protection Program loans.

The Paycheck Protection Program

10.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 that was designed to provide emergency financial assistance to Americans suffering economic harm as a result of the COVID-19 pandemic.  One form of assistance provided by the CARES Act was the authorization of

1 United States taxpayer funded forgivable loans to small businesses

2 for job retention and certain other expenses, through a program

3 referred to as the Paycheck Protection Program ("PPP").  PPP loan

4 proceeds were required to be used by the business on certain

5 permissible expenses, namely, payroll costs, interest on mortgages,

6 rent, and utilities.

7     11.  To obtain a PPP loan, a qualifying business was required to

8 submit a PPP loan application signed by an authorized representative

9 of the business.  The PPP loan application required the small

10 business (through its authorized representative) to acknowledge the

11 program rules and make certain affirmative certifications in order to

12 be eligible to obtain the PPP loan.  One such certification required

13 the applicant to affirm that "[t]he [PPP loan] funds w[ould] be used

14 to retain workers and maintain payroll or make mortgage interest

15 payments, lease payments, and utility payments."  The applicant

16 (through its authorized representative) was also required to

17 acknowledge that "I understand that if the funds are used for

18 unauthorized purposes, the federal government may pursue criminal

19 fraud charges."  In the PPP loan application, the applicant was

20 required to state, among other things, its: (a) average monthly

21 payroll expenses; and (b) number of employees.  These figures were

22 used to calculate the amount of money the small business was eligible

23 to receive under the PPP.  In addition, the applicant was required to

24 provide documentation showing its payroll expenses.

25     12.  A business's PPP loan application was received and

26 processed, in the first instance, by a participating financial

27 institution approved by the SBA.  If a PPP loan application was

28 approved, the participating financial institution would fund the PPP

3

1    loan using its own monies.  The SBA guaranteed the loans funded under

2    the PPP.

3         The Economic Injury Disaster Loan Program

4         13.  The Economic Injury Disaster Loan ("EIDL") Program was an

5    SBA program that provided low-interest financing to small businesses,

6    renters, and homeowners in regions affected by declared disasters.

7         14.  The CARES Act authorized the SBA to provide EIDLs up to $2

8    million to eligible small businesses experiencing substantial

9    financial disruption due to the COVID-19 pandemic.  In addition, the

10   CARES Act authorized the SBA to issue advances of up to $10,000 to

11   small businesses applying for an EIDL.

12        15.  To obtain an EIDL and an advance, a qualifying business was

13   required to submit an application to the SBA and provide information

14   about its operations, such as the number of employees, gross revenues

15   for the 12-month period preceding the disaster, and cost of goods

16   sold in the 12-month period preceding the disaster.  In the case of

17   EIDLs for COVID-19 relief, the 12-month period extended from January

18   1, 2019, to January 31, 2020.  Applicants certified that all the

19   information in the application was true and correct to the best of

20   their knowledge.

21        16.  EIDL applications were submitted directly to the SBA and

22   processed by the agency with support from a government contractor.

23   The amount of the loan was determined, in part, on the information

24   provided by the applicant about employment, revenue, and cost of

25   goods, as described above.

26        17.  Any funds issued under an EIDL or advance were issued

27   directly by the SBA.  EIDL funds could be used for payroll expenses,

28   sick leave, production costs, and business obligations, such as

1    debts, rent, and mortgage payments.  If the applicant also obtained a

2    loan under the PPP, the EIDL loan funds could not be used for the

3    same purpose as the PPP loan funds.

COUNTS ONE THROUGH FOUR

[18 U.S.C. § 1343]

A.    SCHEME TO DEFRAUD

18.    Beginning in or around April 2020, and continuing until at least in or around April 2021, in San Bernardino County, within the Central District of California, and elsewhere, defendant FRANK EDWARD PETERS II, also known as ("aka") "Tasm D. Pemp," aka "Peter Peters," knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud SBA-approved lenders Bank of America, U.S. Bank, and Benworth Capital, and the SBA, by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

B.    MEANS TO ACCOMPLISH THE FRAUDULENT SCHEME

19.    The fraudulent scheme operated and was carried out, in substance, as follows:

        a.    Defendant PETERS would submit false and fraudulent PPP and EIDL loan applications to Bank of America, U.S. Bank, and the SBA on behalf of himself and Frannon Inc., an entity which he controlled, but which had no payroll expenses and little to no ongoing business operations.

        b.    Defendant PETERS also directed Person 1 to submit false and fraudulent PPP and EIDL loan applications to Bank of America, U.S. Bank, Benworth Capital, and the SBA on behalf of Bqute Inc., which Person 1 controlled, but which had no payroll expenses and little to no ongoing business operations.

        c.    To induce Bank of America, U.S. Bank, Benworth Capital, and the SBA to approve PPP and EIDL loans, defendant PETERS would support the loan applications with phony tax documents and

financial statements, inaccurately indicating that he, Person 1,

Frannon Inc., and Bqute Inc. had employees, had filed tax forms, and

had made payroll payments, among other things.

        d.    Defendant PETERS would certify in the PPP and EIDL

loan applications that defendant PETERS, as authorized representative

of Frannon Inc., knew and understood the terms and rules of the PPP

loan program, which provided that proceeds were to be used by the

recipient for only specific purposes, such as to pay only certain

authorized business expenses, such as payroll, mortgage interest,

lease, and utilities.

        e.    Defendant PETERS would direct Person 1 to certify in

the PPP and EIDL loan applications that Person 1, as authorized

representative of Bqute Inc., knew and understood the terms and rules

of the PPP loan program, which provided that proceeds were to be used

by the recipient for only specific purposes, such as to pay only

certain authorized business expenses, such as payroll, mortgage

interest, lease, and utilities.

        f.    By making materially false and fraudulent

representations in PPP and EIDL loan applications, defendant PETERS

caused Bank of America, U.S. Bank, and the SBA to transfer via

interstate wire PPP loan proceeds to the Bank of America accounts

ending in 2872 and 4950, and to the Chase Bank account ending in

9982, all of which were accounts that defendant PETERS controlled.

        g.    By directing Person 1 to make materially false and

fraudulent representations in PPP loan applications, defendant PETERS

caused Bank of America, U.S. Bank, Benworth Capital, and the SBA to

transfer via interstate wire PPP loan proceeds to the Bank of America

7

accounts ending in 9387 and 2076, and to the Wells Fargo Bank account ending in 4473, which defendant PETERS and Person 1 controlled.

h.    Defendant PETERS would knowingly misapply PPP and EIDL loan proceeds for his own personal benefit, including by using the money towards the down payment of his primary residence in Rancho Cucamonga, California, purchasing and renovating ten houses in Missouri, paying for liposuction, purchasing eight to ten vehicles, and paying to settle a lawsuit.

i.    In total, as a result of his scheme, defendant PETERS obtained for himself and Person 1 approximately $1,211,653.00 in PPP and EIDL loan proceeds, to which he knew he was not entitled.

C.    USE OF WIRES

20.    On or about the dates set forth below, in San Bernardino County, within the Central District of California, and elsewhere, defendant PETERS, for the purpose of executing the above-described scheme to defraud, transmitted and caused the transmission of a wire communication in interstate commerce:

| COUNT | DATE | WIRE |
|---|---|---|
| ONE | April 28, 2020 | Wire transfer in the amount of $128,242.00 from Bank of America, National Association, using a server located outside the State of California, to Frannon Inc.'s Bank of America account in Rancho Cucamonga, California ending in 2872. |
| TWO | February 13, 2021 | Wire transfer in the amount of $34,415.00 from Bank of America, National Association, using a server located outside the State of California, to Frannon Inc.'s Bank of America account in Rancho Cucamonga, California ending in 4950. |

| COUNT | DATE | WIRE |
|---|---|---|
| THREE | March 27, 2021 | Wire transfer in the amount of $20,832.00 from U.S. Bank, National Association, using a server located outside the State of California, to Person 1's U.S. Bank account in Rancho Cucamonga, California ending in 4473. |
| FOUR | June 28, 2021 | Wire transfer in the amount of $500,000.00 from Bank of America, National Association, using a server located outside the State of California, to Frannon Inc.'s Bank of America account in Rancho Cucamonga, California ending in 2872. |

9

1                        FORFEITURE ALLEGATION

2                            [18 U.S.C. § 982]

3        1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal

4   Procedure, notice is hereby given that the United States of America

5   will seek forfeiture as part of any sentence, pursuant to Title 18,

6   United States Code, Section 982(a)(2), in the event of the

7   defendant's conviction of any of the offenses set forth in Counts One

8   through Four of this Indictment.

9        2.    The defendant, if so convicted, shall forfeit to the United

10  States of America the following:

11           (a) All right, title and interest in any and all property,

12  real or personal, constituting, or derived from, any proceeds

13  obtained, directly or indirectly, as a result of such offense; and

14           (b) To the extent such property is not available for

15  forfeiture, a sum of money equal to the total value of the property

16  described in subparagraph (a).

17       3.    Pursuant to Title 21, United States Code, Section 853(p),

18  as incorporated by Title 18, United States Code, Section 982(b), the

19  defendant, if so convicted, shall forfeit substitute property, up to

20  the total value of the property described in the preceding paragraph

21  if, as the result of any act or omission of the defendant, the

22  property described in the preceding paragraph, or any portion

23  thereof: (a) cannot be located upon the exercise of due diligence;

24  (b) has been transferred, sold to or deposited with a third party;

25  ///

26  ///

27

28

10

1   (c) has been placed beyond the jurisdiction of the court; (d) has

2   been substantially diminished in value; or (e) has been commingled

3   with other property that cannot be divided without difficulty.

4

5                                    A TRUE BILL

6

7                        DEPUTY  _____
                                  Foreperson
8

9   JOSEPH T. MCNALLY
    Acting United States Attorney
10

11  *Lindsey Greer Dotson*

12  LINDSEY GREER DOTSON
    Assistant United States Attorney
13  Chief, Criminal Division

14  SEAN PETERSON
    Assistant United States Attorney
15  Chief, Riverside Branch Office

16  TRITIA L. YUEN
    Assistant United States Attorney
17  Riverside Branch Office

18

19

20

21

22

23

24

25

26

27

28

                                  11